ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **AUTORIDAD PARA EL REDESARROLLO LOCAL DE ROOSEVELT ROADS** DEMANDANTE(S)-APELANTE(S) | | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **FAJARDO** |
| V. | **KLAN202400666** | Caso Núm. **CE2024CV00039** (303) |
| **UNITED REAL ESTATE, INC. Y OTROS** DEMANDADA(S)-APELADA(S) | | Sobre: Desahucio |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 24 de febrero de 2025.

Comparece ante este Tribunal de Apelaciones, la **AUTORIDAD PARA EL REDESARROLLO LOCAL DE ROOSEVELT ROADS** (**AUTORIDAD**) mediante *Apelación* instada el 12 de julio de 2024. En su recurso, nos solicita que revisemos la *Sentencia* decretada el 2 de julio de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Fajardo.[1] Mediante esta, se desestimó, sin perjuicio, la *Demanda de Desahucio* interpuesta el 8 de abril de 2024 por la **AUTORIDAD.** Concluyó que "el emplazamiento no existe constancia alguna que el emplazamiento fue debidamente diligenciado. No surge del emplazamiento ante nuestra consideración si se dejó el mismo a una persona autorizada a recibir el emplazamiento a nombre de United o si su posición dentro de la empresa es de suficiente autoridad o capacidad como para entender que representa a la corporación a los fines del emplazamiento".

---

[1] Este dictamen judicial fue notificado y archivado en autos el 3 de julio de 2024. Apéndice de la *Apelación,* págs. 92- 96.

Número Identificador:  SEN2025_____

Exponemos el trasfondo fáctico y procesal que acompañan la presente controversia.

### - I -

El 27 de julio de 2018, la **AUTORIDAD,** representada por el señor IAN CARLO SERNA como director ejecutivo, y **UNITED REAL ESTATE INC. (UNITED),** representado por el señor JASON HILBERT como presidente, suscribieron un *Lease Agreement* (contrato de arrendamiento) concerniente a un proyecto ubicado en los terrenos de la antigua Base Naval Roosevelt Roads con un término de vigencia de veinte (20) años.[2] La aludida propiedad pertenece a la **AUTORIDAD.** Conforme a lo pactado en el contrato de arrendamiento, **UNITED** desarrollaría unos terrenos con un área de aproximadamente veinte punto cinco (20.5) cuerdas para la creación de una comunidad estilo resort que podría incluir arrendamientos o rentas diarias, semanales o alquileres de hasta cuarenta (40) años para usos residenciales a cambio del pago de unos cánones establecidos. Entre las facilidades que serían desarrolladas por **UNITED** se encontraban unas viejas barracas utilizadas por el US Navy.

El contrato de arrendamiento requería un *Project Schedule* para el desarrollo del diseño dentro de un plazo de ciento ochenta (180) días, y efectuar pagos, lo cual no fue realizado. Ante ello, el 2 de enero de 2024, la **AUTORIDAD** remitió una misiva, mediante correo electrónico, dirigido al señor JASON HILBERT, en la cual cancelaba el contrato de arrendamiento por el incumplimiento de obligaciones principales; requería a **UNITED** desalojar los terrenos; y concedía un plazo hasta el 2 de marzo de 2024 para desocupar.[3]

Al no evacuar la propiedad, el 8 de abril de 2024, la **AUTORIDAD** entabló una *Demanda de Desahucio.*[4] Arguyó que **UNITED** le adeudaba la cantidad de $303,074.46 más un 6% de interés legal por concepto de utilidades. Señaló que había realizado gestiones, pero las mismas resultaron

---

[2] Apéndice de la *Apelación,* págs. 9- 51.
[3] *Íd.,* págs. 52- 53.
[4] *Íd.,* págs. 1- 8.

infructuosas.[5] Propuso que toda vez que el contrato de arrendamiento había sido cancelado ante su incumplimiento, se le ordenara el lanzamiento de **UNITED** de sus terrenos; y se le condenara al pago de las costas, gastos y honorarios de abogado.

El 10 de abril de 2024, se expidieron *Emplazamiento y Citación por Desahucio* en el cual se pautó el juicio para el 5 de mayo de 2024. Poco después, el 18 de abril de 2024, se diligenció el *Emplazamiento y Citación por Desahucio* dirigido a **UNITED**.[6] El 24 de abril de 2024, la **AUTORIDAD** presentó *Moción Notificando Emplazamiento Diligenciado y Solicitud de Emplazamiento por Edicto*.[7] Adujo que, el 18 de abril de 2024, **UNITED** fue emplazada personalmente mediante el señor **WILLIAM MATOS**, quien se identificó como *Chief Operating Oficer* (COO). Manifestó que pese a las acciones realizadas para emplazar a los señores **JASON HILBERT** y **LANCE DEHNING** no se había podido concretar y el diligenciamiento. Dicho escrito está acompañado de *Declaración Jurada* suscrita el 24 de abril de 2024 por el señor **JUAN C. REYES LÓPEZ**, quien efectuó el emplazamiento en las instalaciones de la antigua Base Naval Roosevelt Roads y afirmó sus gestiones para localizar a los señores **JASON HILBERT** y **LANCE DEHNING**.[8]

Después, el 7 de mayo de 2024, se publicó el emplazamiento por edicto dirigido a los señores **JASON HILBERT** y **LANCE DEHNING**.[9] Al otro día, la **AUTORIDAD** presentó *Moción al Amparo de la Regla 4.7 de Procedimiento Civil*.[10]

El 10 de junio de 2024, **UNITED** presentó *Moción Solicitando Desestimación de la Demanda por Falta de Jurisdicción sobre la Codemandada United Real Estate Inc.*[11] Mediante esta, argumentó que **UNITED** no había sido debidamente emplazada, toda vez que, el señor **WILLIAM MATOS** no es el

---

[5] Apéndice de la *Apelación,* págs. 52- 53.
[6] *Íd.*, págs. 57- 58.
[7] *Íd.*, págs. 55- 56.
[8] Apéndice de la *Apelación*, págs. 59- 61.
[9] *Íd.*, págs. 62 y 64.
[10] *Íd.*, pág. 65.
[11] *Íd.*, págs. 66- 77.

agente residente de la corporación, ni un oficial o director autorizado por la UNITED. Exteriorizó que del registro electrónico del Departamento de Estado de Puerto Rico surge que el único agente residente, oficial y/o director autorizado es el señor DEHNING. Aseveró que el emplazamiento diligenciado al señor WILLIAM MATOS es inoficioso y contrario a derecho.

El 1 de julio de 2024, la AUTORIDAD presentó su *Oposición a Moción de Desestimación*.[12] En su escrito, expuso que emana de la *Declaración Jurada* del señor REYES LÓPEZ, que el señor WILLIAM MATOS se identificó como *Chief Operation Officer* (COO) de UNITED, lo cual implicaba que tiene una posición de suficiente responsabilidad que le permite recibir un emplazamiento en representación de la corporación. Sostuvo que al señor WILLIAM MATOS identificarse como el COO de la corporación, el emplazamiento fue diligenciado conforme a derecho y el tribunal adquirió jurisdicción sobre UNITED.

Al día siguiente, el 2 de julio de 2024, UNITED presentó *Breve Réplica a "Oposición a Moción de Desestimación"* reiterando que su único oficial y persona encargada es el señor DEHNING.[13] Insistió que el único oficial, director o persona autorizada para recibir la notificación de que existe una reclamación contra UNITED es el señor DEHNING.

Ese mismo día, el foro primario dictó la *Sentencia* apelada. Inconforme con esta determinación, el 12 de julio de 2024, la AUTORIDAD acudió ante este foro intermedio revisor mediante recurso de *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al desestimar la *Demanda* de la Autoridad indicando que el emplazamiento no fue debidamente diligenciado.

El 16 de julio de 2024, pronunciamos *Resolución* en la cual se concedió un período perentorio de treinta (30) días a UNITED para presentar su alegato en oposición. En cumplimiento con la *Resolución*, el 19 de agosto de 2024, UNITED presentó su *Oposición a Apelación*.

---

[12] Apéndice de la *Apelación*, págs. 78- 82.
[13] *Íd.*, págs. 83- 91.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia las partes, nos encontramos en posición de adjudicar. Presentamos las normas de derecho pertinentes a la controversia planteada.

- II -

- A - *Emplazamiento*

El emplazamiento es el mecanismo procesal mediante el cual se le notifica a la parte demandada sobre la existencia de una reclamación instada en su contra y el tribunal adquiere jurisdicción sobre su persona para resolver el asunto.[14] Dicho mecanismo procesal es parte esencial del debido proceso de ley, pues su propósito principal es notificar a la parte demandada de forma sucinta y sencilla que se ha presentado una acción en su contra, garantizándole la oportunidad de comparecer en el juicio, ser oído y presentar prueba a su favor.[15] Conforme a lo anterior, no es hasta que se diligencie el emplazamiento y se adquiera jurisdicción que la persona puede ser considerada propiamente parte; aunque haya sido nombrada en el epígrafe de la demanda, hasta ese momento sólo es parte nominal.[16]

Así pues, los emplazamientos se clasifican por la forma de diligenciarlos y por el domicilio de la parte demandada. El *emplazamiento personal* es aquel que se lleva a cabo mediante la entrega de la demanda y del emplazamiento a la parte demandada. Asimismo, el *emplazamiento mediante edicto* es aquel que se diligencia mediante la publicación de edicto en periódico de circulación general.[17]

En consonancia, los requisitos del emplazamiento son de *cumplimiento estricto* y su adecuado diligenciamiento constituye un

---

[14] *Martajeva v. Ferré Morris y otros,* 210 DPR 612, 620 (2022); *Pérez Quiles v. Santiago Cintrón,* 206 DPR 379, 384 (2021); *Rivera Marrero* v. *Santiago Martínez,* 203 DPR 462, 480 (2019).

[15] *Rivera Torres v. Díaz López,* 207 DPR 636 (2021); *Bernier González v. Rodríguez Becerra,* 200 DPR 637, 644 (2018); *Torres Zayas v. Montano Gómez,* 199 DPR 458, 467 (2017).

[16] *Natal Albelo v. Romero Lugo y otros,* 206 DPR 465, 475 (2021); *Rivera Marrero* v. *Santiago Martínez, supra,* pág. 483.

[17] Véase: Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta edición, Lexis Nexis, 2017, pág. 260.

imperativo constitucional del debido proceso de ley.[18] A tales efectos, toda parte demandada tiene el derecho a ser emplazada "conforme a derecho y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar el fraude y que se utilicen procedimientos judiciales con el propósito de privar a una persona de su propiedad sin el debido proceso de ley".[19]

En nuestro ordenamiento jurídico, los requisitos para la expedición, forma y diligenciamiento de un emplazamiento están instituidos por la Regla 4 de las de Procedimiento Civil de 2009 y su inobservancia priva al tribunal de su jurisdicción sobre la persona de la parte demandada.[20] En lo pertinente, la Regla 4.1 de dicho cuerpo legal dispone que una parte que interese demandar a otra, deberá presentar el formulario de emplazamiento conjuntamente con la demanda para su expedición inmediata por la Secretaría del Tribunal.[21] Por su parte, la Regla 4.3 (c) de las de Procedimiento Civil de 2009 instaura que, una vez expedido el emplazamiento, este:

> [...] será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. El Secretario o Secretaria deberá expedir los emplazamientos el mismo día en que se presenta la demanda. Si el Secretario o Secretaria no los expide el mismo día, el tiempo que demore será el mismo tiempo adicional que los tribunales otorgarán para diligenciar los emplazamientos una vez la parte demandante haya presentado de forma oportuna una solicitud de prórroga. Transcurrido dicho término sin que se haya diligenciado el emplazamiento, el Tribunal deberá dictar sentencia decretando la desestimación y archivo sin perjuicio. Una subsiguiente desestimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos.[22] *(Énfasis suplido).*

El Máximo Foro ha resuelto que el término dispuesto para diligenciar el emplazamiento es "improrrogable".[23] Ante el escenario que Secretaría no expida los emplazamientos el mismo día de haberse instado la demanda, "el término para diligenciar un emplazamiento comenzará a transcurrir, *sin*

---

[18] *Rivera Marrero v. Santiago Martínez, supra,* pág. 481- 486; *Quiñones Román v. Cía. ABC,* 152 DPR 367, 374 (2000).
[19] *First Bank of P.R. v. Inmob. Nac., Inc,* 144 DPR 901, 916 (1998).
[20] 32 LPRA Ap. V, R. 4. *Datiz Vélez v. Hospital Episcopal,* 163 DPR 10, 15 (2004).
[21] 32 LPRA Ap. V, R. 4.1.
[22] 32 LPRA Ap. V, R. 4.3(c).
[23] *Martajeva v. Ferré Morris y otros, supra,* pág. 621; *Sánchez Ruíz v. Higuera Pérez et al.,* 203 DPR 982, 991 (2020); *Bernier González v. Rodríguez Becerra, supra,* pág. 649.

*ninguna otra condición o requisito*, una vez la Secretaría del tribunal expida el emplazamiento".[24] *(Citas omitidas).*

Ahora bien, cuando la *entrega personal* no puede efectuarse por no poderse localizar a la parte demandada, la Regla 4.6 de las de Procedimiento Civil de 2009, por excepción, establece el *emplazamiento mediante edicto*.[25] Para que el tribunal ordene el mismo, la parte demandante presentará una moción acompañada por una declaración jurada conocida como el afidávit de méritos acreditando a satisfacción del tribunal todas las diligencias realizadas para emplazar personalmente a la parte demandada y/o se manifiesta uno de los casos provistos por la aludida Regla 4.6 de las de Procedimiento Civil de 2009.[26] Además, acreditará que existe una reclamación que justifica la concesión de un remedio contra la persona a ser emplazada o dicha persona es parte apropiada del pleito.[27] Una vez se presenta la solicitud ante el tribunal, este discrecionalmente expedirá la orden autorizando la publicación por edicto.[28]

En el caso *Sánchez Ruíz v. Higuera Pérez et al.*, el Tribunal Supremo determinó que el término para realizar un *emplazamiento por edicto*, una vez se intentó emplazar personalmente sin éxito a la parte demandada, comienza a decursar desde que se expide el correspondiente emplazamiento.[29] En otras palabras, cuando se le solicita al tribunal emplazar mediante edicto, comienza a transcurrir nuevamente un término de ciento veinte (120) días para diligenciar el mismo. Empero, este nuevo término de ciento veinte (120) días está sujeto a que la parte demandante solicite emplazar por edictos, **dentro del plazo original de ciento veinte (120) días para diligenciar el emplazamiento** mediante *entrega personal*.[30] Cabe recalcar que, la solicitud deberá acreditar los esfuerzos y diligencias previamente realizadas para

---

[24] *Pérez Quiles v. Santiago Cintrón, supra,* pág. 381.
[25] 32 LPRA Ap. V, R. 4.6.
[26] R. Hernández Colón, *op. cit.,* pág. 269.
[27] *Íd.* pág. 270.
[28] *Íd.*
[29] *Supra.*
[30] *Íd.,* pág. 988.

emplazar personalmente, con hechos específicos y no meras conclusiones o generalidades.[31]

## - B - *Corporaciones*

Las leyes corporativas son instrumentos utilizados por los gobiernos para estimular el desarrollo económico.[32] Es por esto, que las corporaciones son entidades con personalidad jurídica propia y separada de sus miembros.[33] Una vez una corporación queda constituida esta podrá; adquirir y poseer bienes de todas clases, como también contraer obligaciones y ejercitar acciones civiles y criminales, con las limitaciones que impongan las leyes y los documentos de su constitución.[34]

Los estatutos corporativos son considerados como un contrato vinculante entre todos los miembros partícipes de la corporación; los accionistas y funcionarios.[35]

Pertinente al emplazamiento de una corporación, la ley aplicable a la controversia ante nos es la Ley Núm. 164-2009, conocida como la *Ley General de Corporaciones de 2009,* según enmendada.[36] Dicho estatuto reconoce y codifica las capacidades de las corporaciones de emitir capital por medio de acciones corporativas.[37] A tono con lo anterior, de existir alguna reclamación contra un ente corporativo, la *Ley General de Corporaciones, supra,* instituye que se emplazará al mismo de la siguiente manera:

> (a) Se emplazará a cualquier corporación organizada en el Estado Libre Asociado entregando personalmente una copia del emplazamiento **a cualquier oficial o director de la corporación en el Estado Libre Asociado**, **o al agente inscrito de la corporación en el Estado Libre Asociado,** o dejándola en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito (si el agente inscrito es un individuo) en el Estado Libre Asociado, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado. Si el agente inscrito fuere una corporación, se podrá efectuar el emplazamiento a través de dicha corporación en calidad de agente, mediante la entrega en el Estado Libre Asociado de una copia del emplazamiento

---

[31] *Íd.*; *Reyes v. Oriental Fed. Savs. Bank,* 133 DPR 15, 25 (1993).
[32] *Santiago v. Rodríguez,* 181 DPR 204 (2011).
[33] *Íd.*
[34] Artículo 227 del Código Civil de 2020, 31 LPRA § 5881 ant. Artículo 30 del Código Civil de 1930, 31 LPRA § 104; C. Díaz Olivo, *Corporaciones,* ed. 2016, pág. 46.
[35] *Íd.*
[36] 14 LPRA § 3501.
[37] *López Martínez v. Yordán,* 104 DPR 594, 596 (1976).

al presidente, vicepresidente, secretario, subsecretario o cualquier director del agente residente corporativo. El emplazamiento diligenciado mediante la entrega de una copia en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado, para ser eficaz, deberá dejarse en presencia de un adulto por lo menos seis (6) días previos a la fecha del señalamiento del procedimiento judicial y el emplazador, informará claramente, la forma de diligenciamiento en la notificación de la misma. Si la comparecencia ha de ser inmediata, el emplazamiento deberá entregarse en persona al oficial, director o agente residente.

**(b) Cuando mediante la debida diligencia no pudiere emplazarse una corporación entregando el emplazamiento a cualquier persona autorizada para recibirlo, según lo dispuesto en el inciso (A) de este Artículo, tal emplazamiento, se diligenciará según lo dispuesto en las Reglas de Procedimiento Civil del Estado Libre Asociado.[38]**

Por su parte, la Regla 4.4 (e) de las Reglas de Procedimiento Civil de 2009 disponen que se puede emplazar a una corporación, entregando copia del emplazamiento y de la demanda a un oficial, gerente administrativo o agente general o cualquier otro agente autorizado por nombramiento o designado por ley para recibir emplazamientos.[39]

Asimismo, nuestro Tribunal Supremo concluyó en *Rivera Torres v. Díaz López*, que las personas mediante las cuales se puede emplazar a una corporación deben estar en una posición de suficiente responsabilidad como para que una persona razonable pueda presumir que transmitirá o remitirá a sus superiores cualquier emplazamiento y demanda. Es decir, lo verdaderamente importante es la relación entre la persona adulta ante quien se deja el emplazamiento y la corporación.[40] Esto, pues resulta evidente que para que la notificación hecha a la corporación sea válida y suficiente se requiere realizar el emplazamiento mediante personas que, por su posición o funciones, posean cierto grado de autoridad o capacidad para representar la compañía. Esto es, la representatividad es el denominador común relacionado con las personas designadas para recibir los emplazamientos.[41]

---

[38] 14 LPRA § 3781 (2020).
[39] 32 LPRA Ap. V, R. 4.4 (e).
[40] *Supra*.
[41] *Íd.*

### - C – *Regla 39.2 (a) de las de Procedimiento Civil de 2009*

La Regla 39.2(a) de las de Procedimiento Civil de 2009 instaura que, si la parte demandante deja de cumplir con las Reglas o con cualquier orden del tribunal, este podrá, a iniciativa propia o a solicitud de la parte demandada, decretar la *desestimación* del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda.[42] En lo pertinente, la precitada Regla 39.2(a) de las de Procedimiento Civil de 2009 enuncia:

> Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan solo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

En el caso *Maldonado v. Srio. de Rec. Naturales*, el Tribunal Supremo hizo las siguientes expresiones:

> No hay duda de que los tribunales tienen el poder discrecional, bajo las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte; ese proceder, sin embargo, se debe ejercer juiciosa y apropiadamente.
> Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida. La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades -el presente caso es un ejemplo de ello- las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.[43]

---

[42] 32 LPRA Ap. V, R. 39.2(a).
[43] 113 DPR 494, 498 (1982).

En suma, la norma claramente instituida es, primero, amonestar al(a la) abogado(a) y darle una oportunidad para corregir; y segundo, sancionar al(a la) abogado(a) y notificarle directamente a la parte sobre la situación, concediéndole un término razonable para corregir la misma, así como apercibiéndole que de no corregir en treinta (30) días se podrá desestimar la reclamación. Ello, dado que se debe dar cumplimiento a la política judicial imperante, por un lado, de que los casos se ventilen en sus méritos y, por otro lado, de que estos se resuelvan de forma justa, rápida y económica.[44] Indubitablemente, la *desestimación* es la sanción más drástica que puede imponer un tribunal ante la dilación en el trámite de un caso debido a que tiene el efecto de una adjudicación en sus méritos a la cual le será de aplicación la doctrina de cosa juzgada.[45] Por ende, solo debe recurrirse a ella en casos extremos para desestimar o eliminar las alegaciones.[46]

### - III –

En su recurso, la **Autoridad** sostiene que erró el tribunal *a quo* al desestimar la *Demanda de Desahucio* por insuficiencia del diligenciamiento del emplazamiento. Adujo que **United** fue emplazada por medio del señor **William Matos**, quien se identificó como *Chief Operating Officer* (*COO*) de la compañía, y a su consideración, tiene una posición con suficiente autoridad, capacidad o responsabilidad para representar a la corporación, de manera que razonablemente podía deducir que remitiría o entregaría el emplazamiento a los oficiales de la entidad. Particularizó que, por definición, la posición de un *COO* es la siguiente: "a senior executive tasked with overseeing the day-to-day administrative and operational functions of a business. The COO typically reports directly to the chief executive officer (CEO) and is considered to be second in the chain of command." Expuso, además, que no era necesario diligenciar el emplazamiento mediante la

---

[44] *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993).
[45] *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 720 (2009).
[46] *HRS Erase v. CMT*, 205 DPR 689, 700 (2020).

persona que sea el oficial registrado en la plataforma del Departamento de Estado, tal como fue discutido por el foro primario en su sentencia.

Por otro lado, **UNITED** argumentó que el señor WILLIAM MATOS no es el agente residente, oficial o director autorizado por la empresa. Alegó que el diligenciamiento del emplazamiento por conducto del WILLIAM MATOS es inoficioso y contrario a derecho. Veamos.

El señor REYES LÓPEZ, emplazador, suscribió una *Declaración Jurada* en la cual afirmó que el 18 de abril de 2024, se personó a la Urbanización Villas de Loíza en aras de emplazar a los señores LANCE DEHNING y JASON HILBERT, así como a UNITED, pero el lugar se encontraba desocupado. Pormenorizó que unos vecinos del área le indicaron que las letras de la dirección estaban incorrectas y no conocían a nadie por esos nombres. Inclusive, dialogó con el señor Guillermo González, cartero, quien le confirmó lo expresado por los vecinos.

Así las cosas, ese mismo día, se personó a la antigua Base Naval Roosevelt Roads en Ceiba y allí se comunicó, vía telefónica, con el señor Adalberto Molina, empleado de la Base Naval Roosevelt Roads. Posteriormente, el señor Adalberto Molina lo llevó al lugar donde ubican las oficinas de **UNITED.** Se encontró al señor WILLIAM MATOS, quien se identificó como *COO* de la empresa. El señor REYES LÓPEZ le inquirió al señor WILLIAM MATOS por los señores JASON HILBERT y LANCE DEHNING, a lo que éste le contestó que eran sus socios y residían en los Estados Unidos. Enfatizó que el señor WILLIAM MATOS se comunicó, vía telefónica, con los señores JASON HILBERT y LANCE DEHNING, y según la conversación sostenida entre ellos, el señor WILLIAM MATOS le manifestó que estaba autorizado para recibir los documentos del emplazamiento.

Es importante puntualizar que en el ejercicio de su sana discreción y previo a dictar sentencia desestimando y ordenando el archivo, sin perjuicio, los tribunales deben realizar aquellas gestiones conducentes a cerciorarse de sí, en efecto, el emplazamiento fue o no diligenciado dentro del término en

cuestión.[47] La desestimación automática de un pleito sin explorar si la parte demandante diligenció los emplazamientos no fomentaría la economía procesal y la eficiente administración de la justicia. Ello ocurre dado que no se podría prevenir que las partes afectadas tuviesen que recurrir a remedios posteriores a dictarse la sentencia para evidenciar que se emplazó conforme a derecho dentro del término de ciento veinte (120) días estatuido acorde a la Regla 4.3(c) de las de Procedimiento Civil de 2009, *supra*.[48]

Cónsono con lo anterior, y de un análisis de la *Declaración Jurada* del señor REYES LÓPEZ junto a los documentos que obran en el expediente, percibimos que el foro apelado incidió en el error. Discernimos que el tribunal primario debió aquilatar los hechos concernientes a la controversia sobre la alegada insuficiencia del emplazamiento. Por lo tanto, debió celebrar una audiencia evidenciaria para dilucidar los hechos pertinentes para determinar si se adquirió o no jurisdicción sobre UNITED. Específicamente, se debe auscultar y dirimir la capacidad del señor WILLIAM MATOS. Esto es, si es una persona autorizada u ostenta alguna posición con suficiente responsabilidad para recibir el emplazamiento en representación de UNITED.

- IV -

Por los fundamentos expuestos, ***revocamos*** la *Sentencia* intimada el 2 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Devolvemos el caso al foro de origen para que celebre una audiencia evidenciaria sobre la insuficiencia del diligenciamiento del emplazamiento dirigido a UNITED.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[47] *Ross Valedón v. Hosp. Dr. Susoni et al.,* 2024 TSPR 10, 213 DPR__ (2024).
[48] *Íd.*